MARK S. JONES, ET AL., *etc.*

*v.*

C. JOE MULLEN, COMMR., BANKING

DEPARTMENT, *etc.*

(No. 14926)

Decided March 17, 1981.

*Chauncey H. Browning*, Attorney General, *Jon Anthony Reed*, Deputy Attorney General, for appellant.

*Marshall & St Clair and James W. St Clair* for appellees.

NEELY, JUSTICE:

The appellant in this case is the Commissioner of the Banking Department of the State of West Virginia who appeals a final order of the Circuit Court of Logan County which granted an application for a charter as an industrial

loan company to the Ashland Industrial Loan Company. The appellees filed Articles of Incorporation on 29 January 1976 with the Commissioner of Banking and requested that the Commissioner approve their application. The Commissioner made an examination and investigation as required by law and on 8 February 1978 denied appellees' application. The appellees then requested a full hearing which, since the Commissioner found appellees' application to satisfy all the statutory criteria for approval except promotion of the public convenience and advantage, was limited to the question of whether the public convenience and advantage would be served by appellees' proposed industrial loan company in the Beckley area.

At the hearing, appellees and opponents of appellees' application presented extensive evidence, including expert testimony and extensive economic data. On 6 April 1978 the Commissioner entered an order containing findings of fact and conclusions of law which again denied appellees' application. The appellees then appealed the Commissioner's order to the Circuit Court of Logan County who reviewed the evidence presented at the hearing and on 21 March 1979 reversed the Commissioner's decision. The primary error assigned by the appellant is that the circuit court did not apply the correct standard of review, since the court failed to give appropriate weight to the expertise of the Commissioner and substituted his inexpert judicial judgment for the expert economic judgment of the Commissioner. We disagree and affirm.

I

We have spoken to the problem of review of orders of the Commissioner of Banking in the case of *Citizens Bank of Weirton v. West Virginia Board of Banking and Financial Institutions*, 160 W.Va. 220, 233 S.E.2d 719 (1977) where we discussed the need for judicial reviewing authorities to understand the reasoning process by which the Banking Commissioner arrives at his expert conclusions. In that case we carefully explained the reasoning process which should be employed in the drafting of an order by the Banking Commissioner to permit a court to give adequate deference to the Commissioner's expertise. In the case

before us, however, the order of the Commissioner did not follow the form set forth in *Citizens Bank, supra,* and, in fact, as the opinion of the circuit court logically points out, the Commissioner's order was clearly wrong.

The Commissioner's order in its entirety is as follows:

IN RE: THE PROPOSED
ASHLAND INDUSTRIAL LOAN
COMPANY
CITY OF BECKLEY
COUNTY OF RALEIGH
STATE OF WEST VIRGINIA

### ORDER

WHEREAS the organizers of the ASHLAND INDUSTRIAL LOAN COMPANY, having filed with the DEPARTMENT OF BANKING its ARTICLES OF INCORPORATION of an industrial loan company, showing date of the 29th day of January, 1976; and

WHEREAS the Commissioner of Banking having caused to be made a careful examination and investigation as required by statute;

NOW THEREFORE, the Commissioner of Banking, after due consideration, does hereby ORDER that the ARTICLES OF INCORPORATION of the ASHLAND INDUSTRIAL LOAN COMPANY be disapproved.

The Commissioner of Banking provides herewith the following findings of fact and conclusions of law on which such disapproval is based:

### FINDINGS OF FACT

Six criteria are established by statute for the approval of an application to charter an industrial loan company. The criteria and findings follow:

1. Any number of incorporators may establish an industrial loan company, but a minimum of thirteen must be residents of West Virginia.

The articles of incorporation of the applicant list sixteen incorporators, of whom thirteen reside in West Virginia.

2. Capital stock shall not be less than $25,000.

The articles of incorporation and enclosed subscription list show starting capital of $400,000.

3. Resources of the applicant are adequate for the proposed operation.

The proposed starting capital of $400,000 and access to additional funds from the parent appear to assure adequate resources.

4. Applicant has established practical, safe, just and equitable rules and methods for the management of its business.

Documents detailing operating procedures and loan processing submitted by applicant appear to reasonably assure compliance with this criteria.

5. Applicant complies with all applicable laws.

No instance of failure to comply with applicable laws is found.

6. The public convenience and advantage will be promoted by the issuance of a certificate of authority to do business as an industrial loan company.

Beckley and the immediate area are currently served by 22 financial institutions plus at least one mortgage company. A tabular presentation of the types of institutions and their aggregate record of change during the previous year shows:

| Type of Institution | No. of Offices | 1976 Position | 1977 Position | Pct. Change |
|---|---|---|---|---|
| | | (In Thousands) | | |
| Supervised Lenders | 9 | 7,532 | 8,521 | 13% |
| Industrial Loan Companies | 2 | 19,340 | 18,841 | – 3% |
| Banks | 7 | 400,364 | 411,414 | 3% |
| Savings & Loan Associations | 1 | 13,383 | 17,370 | 30% |
| Savings & Loan Branches | 3 | Not Available | Not Available | |

The five supervised lenders with offices in Beckley showed growth of four percent in 1977. The three largest, downtown banks showed growth of .5 percent in 1977.

During the period 1974 to 1977 three new banks, three branch offices of savings and loan associations and a branch office of a mortgage company have been established in the immediate area.

During the past twelve months three applications for the establishment of new banks in the immediate area have been denied on a failure to establish need.

Applicant proposes to operate a two person, one room office on an upper floor of a downtown bank building primarily making loans to customers of small loan offices of applicant's parent company when the small loan office is unable to handle the loan.

## CONCLUSIONS OF LAW

Reviewing applicant's fulfillment of the criteria established for approving the application, the Commissioner of Banking makes the following conclusion:

Based upon the type of operation anticipated, the concentration of existing financial institutions and the slowdown in the growth of downtown financial institutions, with attendant uncertainties about an overly competitive environment, there is not sufficient indication that the public convenience and advantage will be promoted by approval of this application. Accordingly, the application of the organizers of the ASHLAND INDUSTRIAL LOAN COMPANY is hereby disapproved and denied.

/s/ C J Mullen

C. JOE MULLEN,
COMMISSIONER OF BANKING

Signed this 8th day of February, 1978.

The circuit court found that the Commissioner had completely misunderstood the evidence which was presented to him. In the first instance, an industrial loan company does not serve the same market as either a full service bank, savings and loan association, or small loan company. The purpose of an industrial loan company is to make second mortgage loans secured by real estate; a bank, however, is severely limited in its ability to accept a second mortgage as collateral. 12 U.S.C. § 371.[1] While it is true that an industrial loan company might compete with banks with regard to making second mortgage loans on property which is already the subject of a first mortgage, nonetheless, the first mortgage lender absent competition from an industrial loan company has reasonable leverage to force the renegotiation of the first mortgage as a condition precedent to the issuance of the second mortgage.

Furthermore, the Commissioner apparently confused the effect of competition by an industrial loan company with the effect of competition by a new bank since he specifically mentions that during the past twelve months three applications for the establishment of new banks in the immediate area were denied. The record clearly indicates that an industrial loan company does not receive any deposits from the local area, but to the contrary, brings capital raised by means other than demand or time deposits into the community. *W. Va. Code*, 31-7-11 [1974].

## II

The facts of this case indicate that the proposed industrial loan company would bring approximately $400,000 in new capital into the Beckley area which would be available for second mortgage loans. Were there evidence in the record that the existence of a new industrial loan company would siphon deposits away from

---

[1] Until 1974 12 U.S.C. § 371 actually prohibited banks from taking second mortgages unless they held the first mortgage as well. While the statute has been amended to permit banks to accept second mortgages, banks are still hesitant to accept positions as subordinated lien creditors. *See*: [1979] 5 Fed. Banking L. Rep. (C.C.H.) Par. 60,826.

existing banks with outstanding loan obligations, the conclusion of the Commissioner that:

> Based upon the type of operation anticipated the concentration of existing financial institutions and the slowdown in the growth of downtown financial institutions, with attendant uncertainties about an overly competitive environment, there is not sufficient indication that the public convenience and advantage will be promoted by approval of this application . . .

might have been justified upon the record; however, without significantly more elaboration concerning his reasoning process, it must be concluded that the Commissioner was clearly wrong in concluding that an infusion of new capital into the Beckley area would not serve the public convenience and advantage.

In the case before us the circuit court reviewed all of the evidence submitted to the Commissioner, heard argument of counsel, and then drew an order with findings of fact and conclusions of law which complied entirely with the requirements of *Citizens Bank, supra.* In circumstances where the Commissioner does not cogently and convincingly explain his reasons for the denial of a charter, the circuit court is entitled to review the evidence and enter an appropriate order without need to remand the case to the Commissioner. *W. Va. Code,* 29A-5-4(g)(5) [1964]. While in *Citizens Bank, supra,* we remanded the case for further development, in that case there had been no previous guidance from this Court concerning the proper form for administrative orders and the Commissioner had made no reviewable findings. In this case findings were made which on their face were clearly wrong. There must be some finality to litigation when government approval is sought by an applicant who wishes to engage in business; matters cannot be remanded interminably when orders indicate that the conclusions drawn from the facts recited are clearly wrong.

Accordingly, for the reasons set forth above the judgment of the Circuit Court of Logan County is affirmed.

*Affirmed.*